IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DONNA JOYCE BURTON, individually and as Personal Representative of the ESTATE OF VINCENT TRAVIS BURTON, Deceased;<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF HAWAII, et al.,<br><br>Defendants. | CIVIL NO. 20-00208 JAO-RT<br><br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I.     BACKGROUND

Plaintiffs Estate of Vincent Travis Burton ("Mr. Burton," as an individual) and Donna Joyce Burton ("Ms. Burton," as an individual) (collectively, "Plaintiffs") bring this action, which concerns purported injuries sustained by Mr. Burton during his arrest that allegedly caused his death.  Defendants County of

Hawaiʻi ("the County"), Officer Luke Watkins ("Watkins"), Officer Paul T. Isotani ("Isotani"), and Officer Landon Takenishi ("Takenishi") (collectively, "Defendants") now move for summary judgment as to Plaintiffs' remaining claims. *See* ECF No. 93 ("Motion").  For the following reasons, the Court GRANTS the Motion.

A.    **Facts**

The parties present wildly different versions of the events at issue, but only Defendants submitted any evidence supporting their position.  In accordance with Local Rule ("LR") 56.1(a) and Federal Rule of Civil Procedure ("FRCP") 56(c), Defendants filed a "separate concise statement detailing each material fact that the movant contends is undisputed and essential for the court's determination of the motion," and supported those facts with declarations and other evidence.  *See* ECF No. 94.  Plaintiffs, however, failed to file their own separate concise statement or any response to Defendants' concise statement in violation of LR 56.1(e).  Further, Plaintiffs neglected to submit any of their own evidence.  Accordingly, the Court deems the facts in Defendants' concise statement admitted for the purposes of this Motion.  *See* LR 56.1(g); FRCP 56(e)(2). Thus, Defendants' version of events is the only one properly before the Court and the Court recounts it here.  As such, the following facts are undisputed unless otherwise noted.

On the night of May 3, 2018, Takenishi was conducting checks in Hawi on the Island of Hawaiʻi.  ECF No. 94 ¶ 1.  He parked his car and walked near a local café.  ECF No. 94-9 at 2.  As he headed back to his car he noticed that a brown pickup truck had parked behind him.  ECF No. 94 ¶ 3.  It appeared that the driver of the truck released the clutch, causing the engine to stop.  ECF No. 94-9 at 2. Takenishi approached the truck to see whether its driver needed help and to determine why it had parked behind a police vehicle.  *Id*.  The driver, Mr. Burton, had red, watery, and glassy eyes and smelled of alcohol.  *Id*.  Takenishi observed that Mr. Burton's speech was slow and slurred as Mr. Burton kept repeating that he thought Takenishi was someone else.  *Id*.  Takenishi believed Mr. Burton was inebriated.  *Id*.

Takenishi walked back to his car to inform dispatch that he was with the truck.  ECF No. 94 ¶ 6.  While Takenishi was doing so, Mr. Burton exited the truck and Takenishi told him three times to get back in the vehicle.  *Id.* ¶ 7.  Concerned, Takenishi drew his firearm and ordered Mr. Burton back into the truck.  ECF No. 94-9 at 3.  Mr. Burton complied.  ECF No. 94 ¶ 11.  Takenishi returned to the truck to ask the occupants for identification.  ECF No. 94-9 at 3.  Mr. Burton told Takenishi his name, but that his driver's license was expired and that he did not have registration and proof of insurance.  *Id*.  Takenishi then informed Mr. Burton he would be investigating him for driving under the influence ("DUI") and asked

3

him for the keys to the truck.  ECF No. 94 ¶ 15; ECF No. 94-9 at 4.  Mr. Burton refused to hand over the keys and instead started the truck.  ECF No. 94 ¶ 16. Takenishi ordered him to turn it off, but Mr. Burton revved the engine.  *Id.* ¶ 17. Takenishi reached into the truck to grab the keys, but Mr. Burton pushed him away and put the truck in gear.  *Id.* ¶¶ 18–19; ECF No. 94-9 at 4.  To try to stop Mr. Burton from driving away, Takenishi stood in front of the truck, drew his gun, and ordered Mr. Burton to stop.  ECF No. 94 ¶ 21.  Still, Mr. Burton made a U-turn and drove off.  *Id.* ¶ 22.

Takenishi confirmed Mr. Burton's identity and that his license was expired using the police department's Record Management System.  ECF No. 94-9 at 5. Takenishi then initiated an "All Points Bulletin" ("APB") alerting other officers that Mr. Burton had resisted an order to stop and was driving without a license or insurance.  ECF No. 94 ¶ 23; ECF No. 94-19.

Officer Cory Gray ("Gray")[1] heard the call from dispatch that Mr. Burton ran from police in the truck.  ECF No. 94 ¶ 24; ECF No. 94-20 at 2.  Gray noticed the truck at a gas station in Waimea and saw it had two occupants but nobody in the driver's seat.  ECF No. 94 ¶ 25.  Gray asked a customer — later confirmed to be Mr. Burton — whether the truck was his, but Mr. Burton denied it and began walking down the road.  ECF No. 94-20 at 2.  Mr. Burton had red watery eyes and

[1]  Gray is not a named defendant.

4

appeared intoxicated to Gray. *Id.* Gray then approached the truck to ask its occupants who the driver was. *Id.* at 3. Both the male occupant and female occupant responded that they did not know. *Id.* Gray left the gas station momentarily and when he returned the truck was leaving. ECF No. 94 ¶ 28. Trying to stop the truck, Gray hit the window with his hand and yelled "stop," but Mr. Burton drove over a curb and left. *Id.* ¶ 29; ECF No. 94-20 at 4. Gray radioed dispatch to inform officers in the Hamakua District that Mr. Burton was headed their way. ECF No. 94 ¶ 30; ECF No. 94-20 at 4.

Officers Gregg Karonis ("Karonis")[2] and Watkins, learned of the truck, that Mr. Burton fled from officers, and that Mr. Burton was highly intoxicated. ECF No. 94 ¶ 31. The officers were in separate cars, but both spotted the truck, turned on their sirens and pursued the vehicle. *See id.* ¶ 32; ECF No. 94-6 at 2; ECF No. 94-10 at 2. The truck turned its headlights off, drove onto Wailana Street, and stopped near a church. *See* ECF No. 94 ¶ 33; ECF No. 94-10 at 2–3. The officers approached the truck and Mr. Burton admitted his license was expired. ECF No. 94 ¶ 34. Isotani arrived while Watkins and Karonis were speaking to Mr. Burton. ECF No. 94-8 at 2. To Karonis and Watkins, Mr. and Ms. Burton (an occupant of the truck) appeared intoxicated. ECF No. 94 ¶¶ 35–36. Watkins asked Mr. Burton to exit the vehicle so that the officer could perform field sobriety tests in the

---

[2]  Karonis is not a named defendant.

parking lot of the church.  ECF No. 94-10 at 3; ECF No. 94-6 at 4.  Watkins placed Mr. Burton in the "instructional position," which Mr. Burton had trouble maintaining.  *See* ECF No. 94-6 at 4.  Watkins also conducted the Horizontal Gaze Nystagmus and Walk and Turn tests.  *See id.*  The Horizontal Gaze Nystagmus indicated that Mr. Burton was intoxicated.  *Id.*  And during the Walk and Turn test, Mr. Burton took fifteen steps instead of the instructed nine, when Watkins ordered him to stop because it appeared Mr. Burton may have been working his way into a position to flee.  *Id.*

Mr. Burton was arrested for operating under the influence of an intoxicant ("OVUII," Hawaii's DUI statute) and handcuffed behind his back.  *Id.* at 5.  Mr. Burton initially refused to get into the vehicle, but after a few minutes was loaded into the backseat of the police car and his seatbelt was fastened.  ECF No. 94 ¶¶ 41–42.  While in the church parking lot, the officers did not place Mr. Burton on the ground, or strike, kick, or use weapons against Mr. Burton.[3]  ECF No. 94-6 at

---

[3]  Plaintiffs' unsupported allegations about what occurred in the church parking lot are much different.  In Plaintiffs' Complaint, they assert the officers led Mr. Burton behind their police vehicles to keep him out of view of Ms. Burton.  ECF No. 1 ¶¶ 52, 55.  Four officers then forced Mr. Burton to the ground while he was handcuffed.  *Id.* ¶ 53.  While on the ground, the officers allegedly kicked and stomped on Mr. Burton with their booted feet, predominantly around his abdomen.  *Id.* ¶ 54.  Though Ms. Burton could not see Mr. Burton, she could hear Mr. Burton's groaning and grunts.  *Id.* ¶ 56.  Towards the end of the alleged assault, Mr. Burton asked Ms. Burton if she was filming the incident on her phone.  *Id.*

(continued . . .)

5.  Watkins then transported Mr. Burton to the Hamakua/Honoka'a police station. *Id.*; ECF No. 94 ¶ 44.

Meanwhile, Karonis remained in the church parking lot with the truck and Ms. Burton.  ECF No. 94 ¶ 44.  Karonis called to have the truck towed pursuant to Hawai'i County Code § 24-12.  *Id.*  He asked Ms. Burton whether he could call for someone to come pick her up, but she refused.  *Id.* ¶ 45.  Ms. Burton could not drive because she was intoxicated.  *Id.* ¶ 46.

Once Watkins and Mr. Burton arrived at the police station, Watkins opened the car door and noticed that Mr. Burton's seatbelt was off and his handcuffed hands were now in front of him.  ECF No. 94 ¶ 48.  Mr. Burton shoved Watkins in the chest and said, "I'm out of here!"  *Id.* ¶ 49.  Watkins grabbed Mr. Burton with both hands and then transitioned to a bear-like hold, grabbing Mr. Burton from behind with his hands wrapped around Mr. Burton's waist.  *Id.* ¶¶ 50–51.  Mr. Burton was shuffling his feet and trying to pry Watkins's hands apart.  *Id.* ¶ 52.  Watkins started to lose his grip on Mr. Burton so he lowered his body, placed his left foot in front of Mr. Burton's feet, and caused both of them to fall to the ground

---

(. . . continued)

¶ 58.  At that point, the officers stopped and loaded Mr. Burton into the police car. *Id.* ¶¶ 59–60.  Ms. Burton asserts she slept on the steps of the church until she got a ride from someone the next morning.  *See id.* ¶¶ 69, 70.

on their left sides.  *Id.* ¶¶ 53–55.  Watkins climbed on top of Mr. Burton and subdued him.  *See* ECF No. 94-6 at 7.

Mr. Burton said he may have broken arms and a rib.  ECF No. 94 ¶ 62. EMS ("emergency medical service") was called and treated Burton's elbow, but he refused further treatment.  *Id.* ¶ 63.  Mr. Burton consented to an alcohol test and had a BAC of 0.153, three hours after the first police contact, despite claiming that he had consumed only one beer.  *Id.* ¶¶ 37, 64.  Watkins charged him with OVUII, driving without a license, no motor vehicle insurance, and assault on an officer.  *Id.* ¶ 65; ECF No. 94-6 at 8.  Isotani charged Mr. Burton resisting an order to stop, driving without a license, and no motor vehicle insurance.  *Id.* ¶ 66.  Mr. Burton conceded that he should not have tried to flee.  *Id.* ¶ 59.

The next morning, on May 4, police took Mr. Burton to Hilo Medical Center ("HMC"), where x-rays revealed a single rib fracture that the attending nurse or physician remarked was at least a couple weeks old.  *See id.* ¶ 67; ECF No. 94-14 at 2; ECF No. 94-17 at 2; ECF No. 94-28 at 2.  Mr. Burton admitted he had earlier fought with his son, fell off his lanai and his son landed on him.  ECF No. 94 ¶ 68.

He remained in custody until May 8 and sought treatment for other issues, but did not complain of rib pain after May 4.  *Id.* ¶ 69.  On May 11, Mr. Burton returned to HMC and additional rib fractures were observed.  *Id.*  ¶¶ 71–73; ECF No. 94-16 at 3.  Mr. Burton passed away at HMC on May 20, 2018.  ECF No. 1

¶ 94.

**B.    Procedural History**

Plaintiffs commenced this action on May 4, 2020, asserting the following

claims:  Count I (wrongful death); Count II (42 U.S.C. § 1983 – violation of the

Fourth, Fifth, and Fourteenth Amendments of the Constitution and the Hawaiʻi

Constitution); Count III (assault and battery); Count IV (excessive force); Count V

(intentional infliction of emotional distress ("IIED")); Count VI (negligence);

Count VII (negligent infliction of emotional distress ("NIED")); Count VIII (gross

negligence); Count IX (negligence in training and failure to adequately supervise

against Honokaʻa Police Station and the County); Count X (loss of love, support,

and/or consortium ("LOC")); Count XI (intentional injury to a bystander); Count

XII (negligent injury to a bystander); Count XIII (survivor's action); Count XIV

(municipal liability); and Count XV (respondeat superior and/or vicarious

liability).

Defendants moved to dismiss portions of the Complaint.  *See* ECF No. 16.

The Court granted the motion and dismissed the following claims with prejudice:

(1) Official capacity claims against Watkins, Isotani, and Takenishi;

(2) Claims against HPD and Honokaʻa Police Station;

(3) Claims against the State; and

(4) State law claims — Counts I, III, IV, V, VI, VII, VIII, IX, X, XI, XII, and
    XV — against the County.

ECF No. 29 at 15–16.  After the Court's Order on the motion to dismiss, the federal claims against the County and the individual capacity claims against Watkins, Isotani, and Takenishi remained.  *Id.* at 16.

Defendants now move for summary judgment on the remaining claims.  *See* ECF No. 93.  Plaintiffs oppose but failed to submit any evidence in opposition and failed to respond to Defendants' concise statement of facts.  *See* ECF No. 99. Defendants filed a reply.  *See* ECF No. 100.

## II.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party.  *See State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989) (per curiam).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *See T.W. Elec.*, 809 F.2d at 630; Fed. R. Civ. P. 56(c).  The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory.  *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial.  *See T.W. Elec.*, 809 F.2d at 630; *Blue Ocean Pres. Soc'y v. Watkins*, 754 F. Supp. 1450, 1455 (D. Haw. 1991).

If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e).  There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case.  *See Celotex*, 477 U.S. at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994); *Blue Ocean*, 754 F. Supp. at 1455.

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or

11

reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec.*, 809 F.2d at 631 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986)) (footnote omitted).  Inferences must be drawn in favor of the nonmoving party.  *See id.*  However, when the opposing party offers no direct evidence of a material fact, inferences may be drawn only if they are reasonable in light of the other undisputed background or contextual facts and if they are permissible under the governing substantive law.  *See id.* at 631–32.  If the factual context makes the opposing party's claim implausible, that party must come forward with more persuasive evidence than otherwise necessary to show there is a genuine issue for trial.  *See Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

## III.   DISCUSSION

### A.   Federal Claims

Plaintiffs allege in Count II that Defendants used excessive force against Mr. Burton.  *See* ECF No. 1 ¶¶ 102–06.  They also allege that the County is subject to municipal liability for the constitutional violations.  *See id.* ¶¶ 171–75.  As previously noted, the Court dismissed this claim against the officers in their official capacities as derivative of Plaintiffs' claim against the County.  *See* ECF No. 29 at 9.  The Court first addresses Plaintiffs' claim against the Defendant officers in their

individual capacities and then turns to Plaintiffs' claim against the County under a municipal liability theory.

### 1.   Excessive Force

"[A]ll claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted).[4]  "[O]nce a seizure has occurred, it continues throughout the time the arrestee is in the custody of the arresting officers.  Therefore, excessive use of force by a law enforcement officer in the course of transporting an arrestee gives rise to a section 1983 claim based upon a violation of the Fourth Amendment." *Robins v. Harum*, 773 F.2d 1004, 1010 (9th Cir. 1985) (citation omitted); *see Fontana v. Haskin*, 262 F.3d

---

[4]  Plaintiffs purport to bring their § 1983 claim under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, and under the Hawaiʻi Constitution.  *See* ECF No. 1 at 19–20.  But Plaintiffs provide no basis for challenging Defendants' actions under the latter two federal amendments, and violations of the Hawaiʻi constitution are not § 1983 claims.  *See Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) ("Section 1983 . . . is . . . a vehicle by which plaintiffs can bring *federal* constitutional and statutory challenges to actions by state and local officials." (emphasis added) (citation omitted)).  Further, Plaintiffs apparently abandon any claims based on the Fifth or Fourteenth Amendments or the Hawaiʻi Constitution by failing to respond to Defendants' arguments in their opposition.  *See generally* ECF No. 99.  Thus, to the extent Plaintiffs bring claims based on the Fifth or Fourteenth Amendments, or the Hawaiʻi Constitution, Defendants are entitled to summary judgment.

871, 879 (9th Cir. 2001).  "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted).  Thus, courts first examine the level of force used to effectuate the seizure and then balance that use of force against the governmental interests.  *See Mattos v. Agarano*, 661 F.3d 433, 443–44 (9th Cir. 2011) (en banc); *see also Williamson v. City of National City*, — F.4th —, 2022 WL 201071, at *4–5 (9th Cir. 2022). Under the second step, the strength of the government's interest is measured by reference to three factors:  (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396 (citation omitted); *see Landeros ex rel. A.K.H. v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016).  This list of factors is "non-exhaustive"; "[c]ourts still must 'examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'"  *Estate of Lopez v. Gelhaus*, 871 F.3d 998, 1006 (9th

Cir. 2017) (quoting *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010)).[5]

a.   <u>*Nature And Quality Of Force*</u>

The parties dispute what force the officers used against Mr. Burton and how to classify that force. Defendants argue that Watkins used only "minimal force" when he executed a "body hold around [Mr.] Burton's waist and foot trip." ECF No. 93-1 at 22. Plaintiffs, for their part, suggest that the officers used deadly force, presumably referring to their allegations that four officers kicked and stomped on Mr. Burton when he was in the church parking lot. *See* ECF No. 99 at 15–18. Again, the Court reiterates that Plaintiffs have not proffered any evidence in opposition to this Motion. Instead, they seemingly argue that in deadly force cases where the decedent would be the only witness to contradict the officers, the plaintiff need not submit any evidence.[6] *See id.* at 12–14.

---

[5] Defendants devote a portion of their Motion and reply to arguing that probable cause existed to arrest Mr. Burton. *See* ECF No. 93-1 at 17–18; ECF No. 100 at 15–16. It is not clear to the Court as to why. The Court does not read Plaintiffs' Complaint as asserting a claim for false arrest, *see* ECF No. 1 ¶¶ 102–106, and Plaintiffs do not challenge the existence of probable cause in their opposition to the Motion, *see* ECF No. 99. And any supposed lack of probable cause would not affect Plaintiffs' excessive force claim. *See Mattos*, 661 F.3d at 443 n.4; *see also Sharp v. County of Orange*, 871 F.3d 901, 916 (9th Cir. 2017) ("We have expressly held that claims for false arrest and excessive force are analytically distinct." (citation omitted)).

[6] At the hearing, Plaintiffs' counsel urged the Court to take judicial notice of the Complaint so that it may serve as evidence in opposition to the Motion for

(continued . . .)

It is true that in excessive force cases where a plaintiff dies, courts "must ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story — the [decedent] — is unable to testify." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). As such, "[t]he judge must carefully examine all the evidence in the record, such as medical reports, contemporaneous statements by the officer and the available physical evidence, as well as any expert testimony proffered by the plaintiff, to determine whether the officer's story is internally consistent and consistent with other known facts." *Id.* (citations omitted). In other words, "precedent permits the decedent's version of events to be constructed circumstantially from competent expert and physical evidence, as well as from inconsistencies in the testimony of law enforcement." *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013) (citations and footnote omitted). A "significant inconsistency" in the officers' testimony may be sufficient to present a genuine dispute of material fact. *See Gonzalez v. City of Anaheim*, 747 F.3d 789, 791, 794–95 (9th Cir. 2014). But it is not true that a plaintiff may defeat a motion for summary judgment in excessive force cases solely because the plaintiff died. *See Scott*, 39 F.3d at 915–16 (affirming grant of summary judgment to officers). Nor

---

(. . . continued)

Summary Judgment, but could not cite any rule or law that allows the Court to do so. And counsel conceded that she had not asked the Court to take judicial notice of anything in her written opposition to the motion. The Court declines the invitation to thwart the Local Rules and Federal Rules of Civil Procedure.

16

can Plaintiffs defeat summary judgment simply by attacking Defendants' credibility without concrete evidence. *See Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

After reviewing the entire record, the Court concludes that there is no evidence — circumstantial or otherwise — that supports Plaintiffs' allegations that the officers stomped and kicked Mr. Burton in the church parking lot.  First, Plaintiffs argue that the jury could consider the "evidence" that Ms. Burton heard kicking, hitting, and stomping-like noises, at which time Mr. Burton attempted to yell out, "Donna are you getting this on video?" *See* ECF No. 99 at 17–18.  But Plaintiffs did not proffer any such evidence.  They alleged as much in their Complaint, and repeat those allegations in opposition to the Motion, but did not file or direct the Court to actual evidence. *See Celotex*, 477 U.S. at 322–23.  Neither *Scott* nor any of its progeny stand for the principle that a plaintiff may rely solely on her allegations in excessive force cases involving the death of someone at the hands of the police.  In fact, in the cases Plaintiffs cite for the premise that they need not proffer evidence, the Ninth Circuit often noted evidence that the plaintiffs in those cases submitted. *See George*, 736 F.3d at 833 ("[T]he district court concluded that [plaintiff's] evidence, which included an expert witness's report, called into question whether [the decedent] ever manipulated the gun, or pointed it directly at deputies." (footnotes omitted); *see also Kaur v. City of Lodi*, 263 F.

Supp. 3d 947, 963–64 (E.D. Cal. 2017) (deposition testimony of non-party witnesses contradicted the officers' accounts creating a genuine dispute).

Second, there are no significant inconsistencies in any of the officers' testimony about what occurred in the church parking lot, nor do Plaintiffs point to any. Watkins declared that while Mr. Burton was handcuffed behind his back and led to the police car in the church parking lot, he was not put on the ground, struck, or kicked. *See* ECF No. 94-6 at 5. Isotani similarly testified that Watkins handcuffed Mr. Burton's hands behind his back and led him to the patrol car. *See* ECF No. 94-8 at 3. Likewise, Karonis declared that "Watkins informed Mr. Burton that he was being arrested and to place his hands behind his back." ECF No. 94-10 at 4. Karonis reported that he did not see "any force used upon Mr. Burton by any of the officers present." *Id.* The officers all noted that at times Mr. Burton was upset, agitated, or argumentative. *See* ECF No. 94-6 at 5 ("Mr. Burton initially refused to go into the police vehicle and was upset that he was being arrested.); ECF No. 94-8 at 3 ("Mr. Burton's demeanor appeared to change [as he was being put in the police car] and he became agitated and irritated about being arrested."); ECF No. 94-10 at 4 ("During our interaction at the Church Mr. Burton's demeanor would change dramatically as he would at one moment be compliant and polite then all of a sudden he would be argumentative[.]"). Thus, the officers' testimony about the events in the church parking lot is largely

consistent.  Certainly, there are no significant contradictions that would raise a genuine issue as to any material fact, which might explain why Plaintiffs do not direct the Court to any.

Further, there is no circumstantial evidence that the officers subjected Mr. Burton to more extreme force than the hold and trip that Watkins employed.  For example, after arriving to the police station and being subdued by Watkins, Mr. Burton sought medical treatment, and an EMS unit arrived.  *See* ECF No. 94-6 at 7; ECF No. 94-29 at 2.  The EMS official noted that Mr. Burton was bleeding from his elbow and complained of rib pain but able to ambulate freely.  *See* ECF No. 94-29 at 2–3.  After receiving treatment on his elbow, Mr. Burton refused to be transported to the hospital for further evaluation and treatment on his ribs.  *Id.* at 3.  However, the next morning (May 4th), Mr. Burton was taken to HMC.  *See* ECF No. 94-17 at 1–2.  X-rays revealed "a healing fracture of the left lateral 10th rib." ECF No. 94-14 at 2.  The attending nurse or doctor told Mr. Burton that the fracture looked like a pre-existing injury that had been healing for at least a couple of weeks.  ECF No. 94-17 at 2.  Mr. Burton responded that two to three weeks before, he had gotten into a scuffle with his son and fell off his three- or four-foot-high lanai, with his son landing on top of him.  *Id.*  Defendants' expert stated that the "left 10th rib fracture more likely than not occurred 6 to 8 weeks" before the x-

ray was taken.  ECF No. 94-28 at 2.  Thus, there is no evidence in the record that the initial rib fracture resulted from Mr. Burton's interaction with the police.

Similarly, there is no evidence in the record that the officers caused the additional broken ribs that Mr. Burton presented with a week later.  Defendants' expert declared that the acute rib fractures to the left 7th, 8th, and 9th ribs that were present on May 11 were "obvious displaced fractures" that "would have been visible in the X-ray series taken on May 4, 2018."  *Id.* at 3.  The expert continued that "[t]he quality of the X-Rays on May 4, 2018 is excellent and as noted, these fractures were obvious."  *Id.*  Plaintiffs provide no contradictory medical or expert testimony to put any of the foregoing into genuine dispute.  As such, the Court concludes that there is no evidence in the record, even considering the Court's duty to search for inconsistencies and circumstantial evidence, that supports Plaintiffs' allegations regarding the level of force used.

The Court therefore considers the only use of force at issue in this case to be Watkins's hold and trip of Mr. Burton.  It follows that there is no evidence that Takenishi or Isotani used any force against Mr. Burton.  The Court thus grants summary judgment to those two officers on Plaintiffs' federal excessive force claim against them.

Defendants argue that Watkin's body hold and trip of Mr. Burton constituted only "minimal force."  ECF No. 93-1 at 22–23.  Plaintiffs' opposition to the

20

Motion fails to address Watkin's hold and trip, instead focusing on the alleged kicks and stomps. *See* ECF No. 99 at 17–18. Thus, Plaintiffs' do not specifically challenge the hold and trip as unreasonable. Defendants meanwhile present evidence that the body hold and trip used here are "empty hand control techniques typically used by police officers to gain control or subdue a noncompliant individual." *See* ECF No. 94-24 at 2–3 (internal quotation marks omitted). Examples of empty hand techniques include grabs, holds, and arm locks, and are considered "minimal" force. *Id.*; *see also* Nat'l Inst. of Justice, *The Use-of-Force Continuum*, *available at* https://nij.ojp.gov/topics/articles/use-force-continuum (describing grabs, holds and joint locks to restrain an individual as "soft technique[s]" of empty-hand control) (last visited Jan. 31, 2022).

Based on the record, the Court concludes that Watkins used a relatively low-level of force against Mr. Burton. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted). Watkins employed a bear-like hold from behind, hugging Mr. Burton around his waist. ECF No. 94 ¶ 51. As his hands started to slip, Watkins lowered his body, placed his left foot in front of Mr. Burton's feet causing both of them to fall to the ground on their left sides. *Id.* ¶¶ 52–53. Courts have described similar techniques as lower levels of force. *See Williamson*, 2022 WL 201071, at *2, *4

(describing the handcuffing, dropping, lifting, and dragging of a non-compliant but non-violent arrestee as "minimal" force); *Garcia v. City of Santa Clara*, 772 F. App'x 470, 472 (9th Cir. 2019) ("The relatively mild force that was used by law enforcement, which included a leg sweep, control holds, and a punch to the face, was reasonable under the circumstances.  Apart from [the officer's] reasonable use of force to pull [the suspect] into the hallway, all other force used was in direct response to [the suspect's] efforts to resist arrest."); *Donovan v. Phillips*, 685 F. App'x 611, 612 (9th Cir. 2017) (describing the level of force as "relatively minimal" when an officer grabbed the suspect's wrist, pulled her arm downward, and caused suspect to roll onto the ground); *see also Johnson v. County of L.A.*, 340 F.3d 787, 793 (9th Cir. 2003) ("We conclude that hard pulling and twisting applied to extract a moving armed robbery suspect from a getaway car under these circumstances is a minimal intrusion on his Fourth Amendment interests."); *Lawrence v. City & County of S.F.*, 258 F. Supp. 3d 977, 992–93 (N.D. Cal. 2017) (pulling resistant suspect out of a police car and dropping suspect on the ground not excessive force).  The undisputed evidence therefore demonstrates that Watkins's intrusion on Mr. Burton's Fourth Amendment rights was minimal.

      b.     *Seriousness Of Crime*

Defendants argue that Mr. Burton was charged with serious crimes such that this factor weighs "heavily" in their favor.  *See* ECF No. 93-1 at 19–20.  Plaintiffs

respond that the crimes were "petty misdemeanors and criminal violations (pu[n]ishable by a fine, no jail time)." ECF No. 99 at 18. Neither characterization is quite accurate.

Mr. Burton was arrested and charged with assaulting Watkins pursuant to Hawai'i Revised Statutes ("HRS") § 707-712.6, resisting an order to stop a motor vehicle under HRS § 710-1027, driving without a license and no-fault insurance, and OVUII. ECF No. 93-1 at 19;[7] ECF No. 94-6 at 8. Section 707-712.6 provides that the "[a]ssault of a law enforcement officer in the second degree is a misdemeanor. The court shall sentence the person who has been convicted of this offense to a definite term of imprisonment . . . of not less than thirty days without possibility of probation or suspension of sentence." HRS § 707-712.6(2). Similarly, "[r]esisting an order to stop a motor vehicle in the second degree is a misdemeanor." HRS § 710-1027. OVUII is codified at HRS § 291E-61 and is considered a petty misdemeanor. *See, e.g.*, *State v. Fukuoka*, 141 Hawai'i 48, 52 & n.1, 404 P.3d 314, 318 & n.1 (2017).

The Court does not mention the offenses' statutes as misdemeanors to suggest that they lack seriousness, but rather to highlight that they are not necessarily the type of especially violent or serious felonies that justify a

---

[7] Defendants do not assert that the offenses of driving without a license or no-fault insurance are severe enough to weigh in their favor on this factor. *See* ECF No. 93-1 at 18–20.

significant use of force.  *See Bryan*, 630 F.3d at 828 ("While the commission of a misdemeanor offense is not to be taken lightly, it militates against finding the force used to effect an arrest reasonable[.]" (internal quotation marks and citations omitted)).  While assaulting an officer could potentially be a violent and dangerous offense, the circumstances here offer a different picture than those at issue in other excessive force cases.  For example, Defendants cite *Caldwell v. City of Selma*, No. 1:13-cv-00465-SAB, 2014 WL 4275513, at *8 (C.D. Cal. Aug. 19, 2014), for the premise that assault of an officer is an especially serious offense under this *Graham* factor.  *See* ECF No. 93-1 at 19–20.  In that case, the plaintiff "attacked" the defendant officer, "striking him and biting his face causing a wound." *Caldwell*, 2014 WL 4275513, at *2.  The officer also "felt pressure on his handgun which he perceived as an attempt by [p]laintiff to obtain his handgun." *Id*.  Here, the alleged assault on Watkins seems to be Mr. Burton's shove to Watkins's chest and Mr. Burton's attempts to shuffle away from and pry apart Watkins's hands. *See* ECF No. 94 ¶ 52.  Mr. Burton was handcuffed and there is no indication he attempted to use a weapon.  Thus, while assaulting an officer certainly can be serious, this incident did not rise to an especially dangerous level.

Likewise, driving under the influence is highly dangerous to the public, but not the type of offense that necessarily requires the use of force to arrest a subject. *See Parker v. Gerrish*, 547 F.3d 1, 9 (1st Cir. 2008) ("Though driving while

intoxicated is a serious offense, it does not present a risk of danger to the arresting officer that is presented when an officer confronts a suspect engaged in an offense like robbery or assault." (citation omitted)); *see also Hammer v. Gross*, 932 F.2d 842, 846 (9th Cir. 1991) (en banc) (plurality) (weighing the reasonableness of force used in a DUI case in the plaintiff's favor because "while certainly not to be taken lightly, [it] was a misdemeanor").  Further, at the time that Watkins used force against Mr. Burton any risk to the officer or the public at large from the traffic offense had ended because Mr. Burton had been taken into custody away from his truck.  *Compare Hernandez v. Town of Gilbert*, No. CV-17-02155-PHX-SMB, 2019 WL 1557538, *5 (D. Ariz. Apr. 10, 2019) (considering DUI a serious offense when suspect disregarded the officer's flashing lights, continued to drive home, attempted to close garage door, and refused to exit vehicle despite orders), *with Orr v. Cal. Highway Patrol*, Civ. No. 2:14-585 WBS EFB, 2015 WL 848553, at *11 (E.D. Cal. Feb. 26, 2015) (finding that the severity of a misdemeanor DUI is generally low in a case where force was used after the plaintiff pulled over and got out of the car).

Thus, while Defendants certainly had some governmental interest in effectuating Mr. Burton's arrest and detention, this factor does not weigh heavily in their favor and is to a certain degree neutral to the analysis.

c.    *Threat To Safety*

The second *Graham* factor, whether the suspect posed an immediate threat to the safety of the officers or others, is the most important.  *See Mattos*, 661 F.3d at 441.  The Court concludes that this factor weighs somewhat in favor of Watkins's use of force.  Mr. Burton certainly posed some threat to Watkins, though in the light most favorable to Plaintiffs, not a particularly dangerous one.

Some facts counsel against a finding that Mr. Burton posed a threat to the officers or the public.  For example, there is no indication that Mr. Burton was armed or that the officers were worried about Mr. Burton having a weapon.  *See Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (noting that there was no basis in the record to indicate that suspect had a weapon).  Mr. Burton was handcuffed.  ECF No. 94 ¶ 40.  The incident took place at the police station.  ECF No. 94-6 at 6.  At least one other officer observed the scuffle between Mr. Burton and Watkins, suggesting that backup was close at hand.  *See* ECF No. 94-8 at 4.

But "[a]ll determinations of unreasonable force 'must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.'"  *Scott*, 39 F.3d at 914 (quoting *Graham*, 490 U.S. at 396–97).  Here, it is undisputed that when Watkins opened the door to the squad car, he was surprised that Mr. Burton had managed to get his

26

handcuffed hands in front of him and undo his seatbelt.  ECF No. 94 ¶ 48.  Mr.
Burton then lunged at Watkins, shoving the officer in the chest.  *Id.* ¶ 49.  To avoid
falling, Watkins grabbed Mr. Burton and eventually worked him into the body
hold.  *See id.* ¶¶ 50–51; ECF No. 94-6 at 6.  Mr. Burton kept trying to break
Watkins's grip by shuffling away from the officer and trying to pry his hands apart.
ECF No. 94 ¶ 52.  Mr. Burton was intoxicated.  *See* ECF No. 94 ¶ 64.

Defendants' expert notes that Mr. Burton's actions constituted "active
aggression, *i.e.*, physical actions of assault."  *See* ECF No. 94-24 at 2.  Certainly,
Mr. Burton's shove of Watkins demonstrated a physical threat.  *Cf. Bryan*, 630
F.3d at 827 (noting that suspect did not "level a physical or verbal threat against
[the] [o]fficer" (citation omitted)).  Watkins clearly had some interest in securing
Mr. Burton to protect himself and others.

> d.   *Active Resistance*

This *Graham* factor weighs in favor of Defendants.  It is undisputed that Mr.
Burton shoved Watkins as the officer tried to get the detainee out of the police car.
He then tried to extricate himself from Watkins's grip by shuffling and pulling the
officers' hands apart.  Before Mr. Burton could break free from his grasp, Watkins
tripped Mr. Burton, causing both to fall.  Plaintiffs argue — again without any
supportive evidence in the record — that a Hawaiʻi state court dismissed the
escape charge that Defendants attempted to levy against Mr. Burton, and so the

Court should not consider the attempt.  *See* ECF No. 99 at 17.  But Mr. Burton

confessed that it was "stupid" of him to try to flee, *see* ECF No. 94 ¶ 59, and, in

any event, he was clearly noncompliant.

e.      *Balancing The Factors*

Under to the totality of the circumstances and viewing the undisputed facts

in the light most favorable to Plaintiffs, the Court concludes that Watkins's use of

force was objectively reasonable.  While Mr. Burton may not have been under

arrest for particularly violent or serious charges, he unquestionably presented some

threat to Watkins and demonstrated active resistance to arrest when he maneuvered

his handcuffed hands in front of him, got his seatbelt off, shoved Watkins and

scuffled with him.  While the situation did not present the type of danger involved

in many excessive force cases, Watkins's use of minimal force in grabbing and

tripping Mr. Burton was justified to secure the noncompliant and somewhat

threatening suspect.  In short, although the governmental interests at stake here

were not particularly weighty, neither was the force very forceful.  *See Williamson*,

2022 WL 201071, at *6 (reversing denial of summary judgment to officers on

excessive force claim where the governmental interests were low and the force

employed was minimal).  Thus, the Court GRANTS Defendants' Motion as to

Plaintiffs' Count II § 1983 excessive force and Count XIII derivative survivor's

claims against Watkins.

28

2.   <u>Qualified Immunity</u>

"Qualified immunity affords limited protection to public officials faced with liability under 42 U.S.C. § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017) (internal quotation marks and citation omitted).  "To determine whether qualified immunity applies in a given case, [courts] must determine:  (1) whether a public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation."  *Id.* (citing *Kirkpatrick v. County of Washoe*, 843 F.3d 784, 788 (9th Cir. 2016) (en banc)).  For a right to be clearly established, there need not be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted).  "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Mullenix v. Luna*, 577 U.S. 7, 12 (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Because the Court concludes that Plaintiffs have not raised a triable issue as to whether Defendants breached Mr. Burton's constitutional right to be free from excessive force, they cannot establish the first prong of the qualified immunity

29

analysis.  Alternatively, Plaintiffs have not alerted the Court to any precedent suggesting that an officer violates the Fourth Amendment when he grabs onto and trips an arrestee who has shoved the officer and is resisting the officer's attempts to subdue the arrestee.  *See Mullenix*, 577 U.S. at 12 (advising courts to consider whether the violative nature of the particular conduct in light of the specific context is clearly established).  Plaintiffs' attempt to demonstrate that Mr. Burton's rights were clearly established fails.  They direct the Court to *George*, in which the officers shot and killed a man who had a gun but who was not accused of a crime and was not actively resisting arrest.  *See George*, 736 F.3d at 838.  The facts in *George* bear no resemblance to those in this case and would not put an officer on notice that holding and tripping a resistant suspect that pushed the officer violated that suspect's rights.  Thus, as to the Section 1983 counts (Count II and XIII), the Court alternatively grants Defendants' Motion on qualified immunity grounds.

### 3.   Municipal Liability

"[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 693–95 (1978)).  "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."

*Monell*, 436 U.S. at 691.  "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).  A plaintiff must also "show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal [policy or custom] and the deprivation of federal rights." *Id.*  "Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Id.* at 400 (quoting *Monell*, 436 U.S. at 694).

The Court concludes that Plaintiffs cannot hold the County liable because they have not raised a triable issue as to whether any constitutional violation occurred.  *See Long v. City & County of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007) ("If no constitutional violation occurred, the municipality cannot be held liable[.]" (citation omitted)).  Nevertheless, to be comprehensive, the Court addresses Plaintiffs' arguments and alternatively grants the County summary judgment on Plaintiffs' municipal liability claims for the following reasons.

Plaintiffs first seem to argue that the County can be liable for the individual officers' alleged breach of Mr. Burton's constitutional rights under a respondeat superior theory.  *See* ECF No. 99 at 9–10.  *Monell* expressly forecloses this claim.

*See Monell*, 436 U.S. at 691.  To the extent Plaintiffs rely on respondeat superior to hold the County liable, Defendants are entitled to summary judgment.

Plaintiffs next seem to argue that the County has a custom or policy of deliberate indifference.  *See* ECF No. 99 at 10–11.  Plaintiffs, however, fail to identify the policy or custom they are supposedly challenging let alone provide any evidence of the existence of such a policy or custom.

Plaintiffs also appear to assert that the County failed to train Defendant officers properly.  *Id.* at 10–12.  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted).  Still,

> [A] local government can fail to train employees in a manner that amounts to "deliberate indifference" to a constitutional right, such that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."

*Rodriguez v. County of L.A.*, 891 F.3d 776, 802 (9th Cir. 2018) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).  A plaintiff may prove this type of *Monell* liability through evidence of a "failure to investigate and discipline employees in the face of widespread constitutional violations."  *Hunter v. County of Sacramento*, 652 F.3d 1225, 1234 n.8 (9th Cir. 2011); *see also Connick*, 563 U.S. at 62 ("A pattern of similar constitutional violations by untrained employees

is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." (citation omitted)).

But the only evidence in the record is that officers for the County receive training on the use of force and arrests.  ECF No. 94 ¶ 76; *see* ECF No. 94-13 at 1–2 (describing initial training regimen when recruits join the force and annual training for officers).  Further, Plaintiffs provide no evidence of a pattern of excessive force amongst officers that would suggest that the training was insufficient, let alone that the training was so deficient as to constitute deliberate indifference.  And, "[w]hile deliberate indifference can be inferred from a single incident when 'the unconstitutional consequences of failing to train' are 'patently obvious,' an inadequate training policy itself cannot be inferred from a single incident."  *Hyde v. City of Willcox*, — F.4th —, 2022 WL 55542, at *8 (9th Cir. 2022) (citing *Connick*, 563 U.S. at 61) (other citations and footnote omitted).  The minimal use of force Watkins employed against Mr. Burton — a resistant suspect who had pushed the officer — is not the type of obvious consequence from any alleged failure to train that demonstrates deliberate indifference.

Thus, the Court grants Defendants' Motion as to Plaintiffs' Count XIV federal claim against the County for municipal liability.

**B.     State Law Claims**

Defendants urge the Court to grant summary judgment on Plaintiffs'

remaining state law claims, which are against the officers in their individual

capacities:  Count I (wrongful death); Count III (assault/battery); Count IV

(excessive force); Count V (IIED); Count VI (negligence); Count VII (NIED);

Count VIII (gross negligence); Count X (LOC); Count XI (intentional injury to

bystander); Count VII (negligent injury to bystander).  *See* ECF No. 93-1 at 31–33.

Courts may decline to exercise supplemental jurisdiction over a state law

claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Courts declining to exercise supplemental jurisdiction "must

undertake a case-specific analysis to determine whether declining supplemental

jurisdiction 'comports with the underlying objective of most sensibly

accommodating the values of economy, convenience, fairness and

comity.'"  *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (citation and

brackets omitted); *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156,

172–73 (1997).  When a "'case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'"  *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)) (alteration in original).  But even when all federal claims are dismissed before trial, a district court may still exercise supplemental jurisdiction over the remaining state law claims.  *See id.* at 1000 ("This is because a federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367(c)[.]")

Although the Court has granted summary judgment on all federal claims, this case presents one of the rare examples where considerations of judicial economy, convenience, fairness, and comity weigh in favor of exercising jurisdiction over Plaintiffs' state law claims.  First, Plaintiffs fail to oppose Defendants' Motion as it pertains to the state law claims despite filing an opposition that addresses the federal claims.  *See generally* ECF No. 99.  Plaintiffs' lack of opposition in the face of Defendants' Motion suggests that they have abandoned their state law claims at this stage of the litigation.  *See Marentes v. State Farm Mut. Auto. Ins. Co.*, 224 F. Supp. 3d 891, 919 (N.D. Cal. 2016) ("When a non-moving party opposes summary judgment with respect to some claims, but not others, 'a court may, when appropriate, infer from a party's partial opposition

that relevant claims or defenses that are not defended have been abandoned.'"

(quoting *Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014)) (other

citations omitted)).  Declining to exercise supplemental jurisdiction over the

dropped claims would just give Plaintiffs a second bite at the apple in state court,

thereby harming the interests of judicial economy, convenience, and fairness.  The

Court thus grants Defendants' Motion as to the abandoned state law claims.

Alternatively, to the extent Plaintiffs have not abandoned them, the state law

claims still fail.  Hawaii's non-judicial government officials acting in the

performance of their public duties enjoy a "qualified or conditional privilege."  *See*

*Towse v. State*, 64 Haw. 624, 631, 647 P.2d 696, 702 (1982) (footnotes and citation

omitted).  To avoid application of the qualified privilege, the injured party must

"demonstrate by clear and convincing proof that those [allegedly offending]

officials were stirred by malice and not by an otherwise proper purpose."  *Id.*

"Malice is defined as 'the intent, without justification or excuse, to commit a

wrongful act, reckless disregard of the law or of a person's legal rights, and ill will;

wickedness of heart.'"  *Tokuda v. Calio*, Civil No. 13-00202 DKW-BMK, 2014

WL 5580959, at *10 (D. Haw. Oct. 31, 2014) (quoting *Awakuni v. Awana*, 115

Hawai'i 126, 141, 165 P.3d 1027, 1042 (2007)).

As the Court has repeated, Plaintiffs failed to proffer any evidence

whatsoever.  Thus, the only evidence before the Court is from Defendants.  After

reviewing the record, and reading the facts in the light most favorable to Plaintiffs, the Court concludes that there is no triable issue that any of the Defendants acted with the requisite malice. Nor is there any dispute that the officers were acting in the performance of their public duties. As to Isotani and Takenishi, there is no evidence that they used any force against Mr. Burton that caused any injury.[8] Further, because Plaintiffs did not oppose Defendants' Motion on the state law claims, the Court cannot conclude that any other actions could give rise to Plaintiffs' claims against those officers. As to Watkins, the Court concluded above that his use of force against Mr. Burton was objectively reasonable under the circumstances, thus precluding a finding of malice. The only evidence in the record demonstrates that the three officers confronted an intoxicated suspect that attempted to flee the police multiple times, resisted arrest, and pushed one of the officers. Their actions in response to the situation do not establish any genuine dispute about malice. Thus, to the extent Plaintiffs have not abandoned their state

---

[8] At the hearing, Plaintiffs' counsel for the first time took issue with Takenishi's brandishing of his gun when he first tried to stop Plaintiffs from driving away in the truck. But Plaintiffs did not allege that the drawing of the weapon constituted excessive force in their Complaint. *See generally* ECF No. 1. In fact, Plaintiffs do not mention anything about the gun in their Complaint. *See id.* ¶¶ 19–23 (describing initial encounter with police and failing to allege that the officer drew his firearm). Nor did Plaintiffs raise the issue in their opposition to Defendants' Motion. *See generally* ECF No. 99. Thus, Plaintiffs never properly raised the matter for the Court. To the extent Plaintiffs now try to rely on the drawing of the weapon for any of their claims, the Court rejects the post-hoc attempt.

law claims, the Court concludes that Defendants are nonetheless entitled to summary judgment based on Hawaii's qualified or conditional privilege.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion as to all Plaintiffs' remaining claims. Because there are no remaining claims or parties, the Clerk is directed to enter judgment in Defendants' favor in accordance with the above and to close the case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, January 31, 2022.



Jill A. Otake
United States District Judge

---

Civil No. 20-00208 JAO-RT; *Burton, et al. v. City and County of Hawaii, et al.*;
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT